UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH WOODLAND, | ) | CASE NO. 1:09CV2367 |
| Plaintiff, | ) ) | MAGISTRATE JUDGE |
| v. | ) ) ) | GEORGE J. LIMBERT |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

Deborah Woodland ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the Commissioner's decision:

**I.    PROCEDURAL AND FACTUAL HISTORY**

On February 22, 2006, Plaintiff filed an application for SSI alleging disability beginning June 1, 2002 due to left knee arthritis and vision problems. Tr. at 32, 72, 77. Plaintiff's application was denied initially and on reconsideration. Tr. at 34, 51-53, 56-58. In her request for reconsideration, Plaintiff claimed additional impairments of back pain and depression. *Id*. at 56.

On July 7, 2007, Plaintiff filed a request for an administrative hearing. Tr. at 70. On January 6, 2009, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id*. at 5. At the hearing, the ALJ heard testimony from Plaintiff and Carol Mosely, a vocational expert ("VE"). *Id*. On March 31, 2009, the ALJ issued a Notice of Decision - Unfavorable. *Id*. at 38-46. Plaintiff filed a request for review, which the Appeals Council denied. *Id*. at 1-4, 71.

On October 13, 2009, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On February 23, 2010, Plaintiff filed a brief on the merits. ECF Dkt. #12. On May 17, 2010, Defendant filed a brief on the merits. ECF Dkt. #15. Plaintiff did not file a reply. *See* ECF Docket.

## II. <u>SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION</u>

The ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the left knee; diverticulitis; bilateral macular dystrophy and degeneration; and depression. Tr. at 40. The ALJ determined that Plaintiff's impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 40-41. The ALJ specifically considered Listings 1.02A, 2.02, and 12.04. The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b), except that she could not: use left lower extremity controls; climb ladders, ropes, or scaffolds; drive; be around unprotected hazardous heights or machinery; her reading had to be limited to very large print; and she could perform only simple, routine tasks, with only superficial interaction with co-workers and supervisors, and no direct interaction with the general public. *Id*. at 42. The ALJ determined that Plaintiff could perform her past relevant work as a housekeeping cleaner. The ALJ therefore concluded that Plaintiff was not disabled. *Id*. at 46.

## III. <u>STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS</u>

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§

404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

### A. STEP TWO DETERMINATION

Plaintiff first asserts that the ALJ committed substantial error by failing to properly evaluate her impairments. ECF Dkt. #12 at 8. Plaintiff contends that the ALJ failed to recognize and evaluate her carpal tunnel syndrome ("CTS") and Hepatitis C at Step Two of the sequential evaluation and those severe impairments impacted the job considerations identified by the VE. *Id.* at 9.

While he did not address Plaintiff's CTS or Hepatitis C conditions in his Step Two determination, any error by the ALJ in this regard is harmless. The Sixth Circuit held in *Maziarz*

*v. Secretary of Health & Human Services*, 837 F.2d 240, 244, (6th Cir. 1987), that an ALJ's finding of non-severity of a condition could not constitute reversible error where the ALJ found other impairments to be severe. The *Maziarz* court reasoned that, upon determining that a claimant has one severe impairment, the regulations require the Secretary to continue with the remaining steps in his disability evaluation as outlined above. *Id*.; *see also Fisk v. Astrue*, 253 Fed.Appx. 580, 2007 WL 3325869, (6th Cir. Nov. 9 2007), unreported ("Because the ALJ considered these impairments when determining Fisk's residual functional capacity, we find it unnecessary to decide whether the ALJ erred in classifying the impairments as non-severe at step two.") (internal quotation omitted); *Boothe v. Commissioner of Social Security*, Case No. 1:06-CV-00784, 2008 WL 281621 at *10 (S.D.Ohio Jan. 31, 2008), slip op.:

> In the instant case, the ALJ determined that plaintiff suffered from severe impairments of degenerative disc disease in the lumbar spine and depression. Although the ALJ did not identify the other conditions cited by plaintiff as severe impairments, a review of the ALJ's decision indicates he did consider the limitations and restrictions imposed by plaintiff's remaining conditions in the remaining steps of the disability determination process as required under Social Security Ruling 96-8p.FN4 When he assessed plaintiff's residual functional capacity, the ALJ considered the evidence of loss of disc height, disc dessication, disc bulge and protrusion, and the annular disc tears from 2002 and 2003, as well as the later 2005 evidence from Dr. Sakalkale, showing tenderness and muscle spasm at L4-5 and L5-S1, diminished lumbar range of motion, negative straight leg raising, 5/5 strength in the lower extremities, intact sensation, and symmetrical deep tendon reflexes. (Tr. 14-15, 16). The ALJ considered this evidence, along with the December 2003 findings of consultative examiner Dr. Akaydin, in determining plaintiff's RFC. (Tr. 16-17). Because the ALJ considered these impairments when determining plaintiff's residual functional capacity, including those symptoms and limitations which plaintiff characterized as being caused by such impairments, any failure on the part of the ALJ to characterize such impairments as "severe" at step two of the sequential evaluation process does not constitute reversible error. *Maziarz*, 837 F.2d at 244. Therefore, plaintiff's first assignment of error is without merit.

Likewise, in the case at bar, the ALJ found that Plaintiff's osteoarthritis of the left knee, diverticulitis, bilateral macular dystrophy and degeneration, and depression were severe. Tr. at 40. Under *Maziarz,* the analysis can end here because the ALJ was required to go on to consider Plaintiff's impairments in determining her RFC. *See* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " ); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your

medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the ALJ went on to find that no impairment or combination of impairments met or medically equaled a Listing, and the ALJ considered Plaintiff's CTS in evaluating her RFC. Tr. at 40-41. After reviewing Plaintiff's impairments and her testimony, both of which discussed CTS and the use of wrist braces, the ALJ indicated "I accommodate these physical impairments evaluated so far by limiting the claimant to light work with no leg controls, and no climbing of ladders, ropes or scaffolds." *Id.* at 43. Further, the ALJ did consider Plaintiff's CTS in his credibility determination and Step Four evaluation. Tr. at 42-46. He noted Plaintiff's testimony regarding CTS and the wrist braces that she stated were prescribed to her for the condition. *Id*. at 42. He indicated that surgery was not offered by any physician for Plaintiff's CTS, and a physical examination revealed an intact neurological examination and no positive signs for CTS. *Id.* at 44-46. He also found that Plaintiff received no pain medications for this condition, no diagnostic studies existed in the record of an EMG or nerve conduction study, and no doctor restricted Plaintiff based upon CTS. *Id.*

While the ALJ did not discuss Plaintiff's claim of Hepatitis C, no medical evidence exists in the record which confirmed a diagnosis of this condition. As Defendant points out, the two pages of the record cited by Plaintiff regarding Hepatitis C fail to definitively establish the diagnosis or any resulting limitations therefrom. The first medical record is a November 2006 psychiatric report in which the psychiatrist merely notes Plaintiff's report of her medical history as including a recent diagnosis of Hepatitis C. Tr. at 526. The other document is a June 2007 letter from the Cleveland Department of Public Health, indicating that Plaintiff has or may have Hepatitis C. *Id*. at 655 ("[t]his letter is to let you know that you have, or may have, Hepatitis C."). Even if the letter could be read as establishing a definitive diagnosis, there is no evidence of any resulting limitations. And Plaintiff points to no other medical evidence establishing resulting limitations.

For these reasons, the Court rejects Plaintiff's Step Two arguments regarding CTS and Hepatitis C.

### B.     STEP THREE DETERMINATIONS

Plaintiff also asserts that the ALJ erred in evaluating whether her severe impairments met or equaled the Listings. ECF Dkt. #12 at 9. In addressing the ALJ's alleged Step Three errors, Plaintiff presents three perfunctory arguments. Plaintiff first states that ALJ apparently overlooked her treatment at Metro Health Medical Center on September 5, 2006 because he noted a gap in her medical treatment from December 2005 and April 2007 for osteoarthritis of her left knee. ECF Dkt. #12 at 9. She also asserts that the ALJ erred with regard to whether she used an ambulatory aid, one of the criteria needed in order to meet Listing 1.02A for dysfunction of a major weight-bearing joint. *Id.* at 10. Plaintiff also asserts that the ALJ failed to completely evaluate her depression under Listing 12.04 because he did not complete his assessment of whether her depression met the "C" criteria of that Listing. *Id*. Plaintiff concludes that the ALJ's decision, which was permeated with "misstatements and inaccurate summations of the medical evidence," deprived her of a fair review of the evidence and whether her impairments met or equaled the Listings. *Id.* at 11.

The Court points out that in the third step of the analysis to determine a claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that her impairment meets or is medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that her impairment meets all of the requirements for a listed impairment. *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987); 20 C.F.R. § 404.1525(d). An impairment that meets only some of the medical criteria does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 describes impairments for each of the major body parts that are deemed of sufficient severity to prevent a person from performing gainful activity. 20 C.F.R. § 404.1525(a). To meet a listed impairment, the claimant must show that her impairment meets all of the requirements for a listed impairment. *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987). 20 C.F.R. §§ 404.1525(d) and 416.925(d). In order to equal a listed impairment, a claimant must "present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531.

The Court finds that the ALJ's decision certainly shows some sloppiness. However, the

burden is on Plaintiff to show that her impairments meet or equal the Listings. Plaintiff fails to cite the Court to any evidence supporting a finding that her impairments, whether individually or in combination, met or equaled any of the Listings. She does not cite the Court to any evidence, but rather, merely points out ALJ errors in the Step Three analysis.

Plaintiff is correct that the ALJ apparently overlooked the September 5, 2006 treatment at Metro Health Medical Center. The ALJ reviewed Plaintiff's medical treatment for her left knee, beginning in July 2002 and throughout 2002. Tr. at 43. He then indicated that Plaintiff did not receive any further treatment for the left knee until October 2005 when she underwent an x-ray which showed moderate osteoarthritis with a small amount of effusion. *Id*. He noted Plaintiff's December 2005 steroid injection for her knee pain and then skipped to a November 2007 examination for back pain, left knee osteoarthritis and bilateral hand tingling. *Id*. While the ALJ apparently skipped the one September 2006 medical treatment for the left knee osteoarthritis, the Court finds oversight to be harmless. A gap in treatment still existed from the end of 2002 until October 2005. The ALJ noted this and Plaintiff does not dispute this gap. *Id*.; ECF Dkt. #9.

Moreover, Plaintiff fails to show how the September 2006 oversight by the ALJ would have resulted in a finding that Plaintiff's left knee impairment met or equaled Listing 1.02A. The September 5, 2006 note from Metro Health Medical Center indicated that Plaintiff presented with left knee pain for seven days after she fell on her knee. Tr. at 498. Upon examination, Plaintiff's left knee had no swelling, no deformity or warmth, the patella moved freely and the knee had no crepitus or tenderness, no swelling or mass and Plaintiff could extend the knee against resistance. *Id*. at 498-499. An x-ray revealed negative results, except for degenerative spurring at the medial and lateral joint aspects and posterior patella, which was not significantly changed from a prior exam. *Id*. at 499. Plaintiff had reported a history of degenerative joint disease. *Id.* at 498. Plaintiff was diagnosed with a left knee sprain. *Id*. Since a gap in treatment existed despite the ALJ's error, and Plaintiff provides no showing that the ALJ's Listing determination would have been different had the September 2006 treatment note been included, the Court sees no basis for reversing the ALJ's decision.

Plaintiff also correctly points out that the ALJ incorrectly stated that she used a cane in her

right hand even though she had a left knee injury. The ALJ stated throughout the decision that Plaintiff used a cane, but in the RFC section of his decision, he incorrectly stated that she testified that she used it in her right hand. Tr. at 42. Plaintiff did clearly testify that she used the cane in her left hand. *Id*. at 18. However, it does not appear that the ALJ relied upon this misstatement for purposes of determining whether Plaintiff's impairment met Listing 1.02A[1].

When reviewing the requirements of Listing 1.02A, the ALJ found that Plaintiff did not use "ambulatory aids" as outlined in the Listing. Section 1.02A of the Listing of Impairments for the major dysfunction of a joint requires, *inter alia*, "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." Section 1.00B2b(1) defines the ability to ambulate effectively as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.

Listing 1.00B2b(1). Listing 1.00B2b(2) goes on to state that in order to ambulate effectively,

> individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Listing 1.00B2b(2). The Listing goes on to give examples of ineffective ambulation, which "includes, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes..." *Id.*

The ALJ properly determined in his Step Three analysis, which included Listing 1.02A, that

---

[1] The Court addresses the ALJ's use of this misstatement when assessing Plaintiff's credibility in the credibility section of this Memorandum Order & Opinion. *See infra*.

-8-

Plaintiff did not use "ambulatory aids." Tr. at 40. While Plaintiff testified that she used a cane, she cites no medical evidence showing that she was prescribed the cane. The ALJ noted that the record failed to show that Plaintiff was prescribed the cane. *Id.* at 44. Further, even if Plaintiff had identified such support, the Listing requirement for "ambulatory aids" describes not only insufficient lower extremity functioning, but also the limited function of both upper extremities due to the use of hand-held assistive devices. *See* Listing 1.00B2(b)(1). Plaintiff did not show the limited use of both extremities resulting from the use of a cane and does not indicate such now. The ALJ indicated that Plaintiff did not use a walker, two crutches, or two canes, the examples cited in Listing 1.00B2(b)(2) as describing the inability to ambulate effectively. For these reasons, the Court finds Plaintiff's assertion without merit.

Plaintiff is also correct that the ALJ apparently failed to complete his analysis of her depression under Listing 12.04 because he left the language "Insert Macro" in this part of the "C" criteria analysis. ECF Dkt. #12 at 10. After a complete evaluation of the "B" criteria of Listing 12.04, the ALJ indicated, "I have also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria. Insert Macro." Tr. at 41. However, again, Plaintiff points to no evidence establishing that she met any of the "C" criteria. The ALJ explained in his decision addressing the "B" criteria of Listing 12.04 that Plaintiff had experienced "one to two episodes of decompensation, each of extended duration. The claimant was hospitalized for depression in November 2006." Tr. at 41. Listing 12.00C.4 sets forth the requirements for episodes of decompensation of extended duration:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.
>
> The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months,

each lasting for at least 2 weeks.

Listing 12.00C4. Plaintiff does not argue that she met this portion of the "C" criteria or that the ALJ erred in determining that she had only one or two episodes of decompensation. This leaves remaining the other two ways in which Plaintiff can meet the "C" criteria: either a showing that she has "2. [a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or [a] 3. [c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." Listing 12.04C.

Plaintiff does not offer support showing that she has met either of these criteria and the record fails to provide such support. The only opinion in the record that specifically addresses Listing 12.04C is from an agency reviewing psychologist who completed a psychiatric review technique form indicating that the evidence of Plaintiff's depression did not meet the "C" criteria of Listing 12.04. *Id.* at 531. Dr. Pickholtz, an examining psychologist, opined that Plaintiff had only mild limitations in her abilities to handle eight-hour work activities, be reliable, and to handle the stresses and pressures of low skilled and unskilled labor. *Id.* at 531, 546-547, 550-564. Dr. Roman [2], a mental health professional who apparently treated Plaintiff, opined on January 18, 2007 that Plaintiff had "poor" abilities to maintain regular attendance and be punctual within customary tolerances, maintain concentration and attention for extended periods of time, deal with work stresses, understand and execute detailed instructions, perform at a consistent pace without an unreasonable amount and length of rest periods, and to complete a normal workday without interruption from psychologically-based symptoms. *Id.* at 531-532. However, neither the record nor Plaintiff indicate the nature and extent of the treatment relationship between Dr. Roman and Plaintiff and Dr. Roman failed to provide any objective support for her opinion. The ALJ therefore could disregard this opinion. *See supra*; 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2); SSR 96-2p; *Carter v. Comm'r of Soc. Sec.*, 36 Fed. App'x 190,

---

[2] Plaintiff misspells Dr. Roman's name as Dr. Roma throughout this section of her brief. *See* Tr. at 532.

191, citing *Walker v. Sec'y of Health & Human Servs*., 980 F.2d 1066, 1070 (6th Cir. 1992); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  An ALJ may properly disregard an opinion of a treating physician opinion when the opinion is not supported by clinical findings or medical evidence. *Carte*r, 36 Fed. App'x at 191, citing *Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 287 (6th Cir.1994).  An ALJ may accept a non-examining physician's opinion over that of an examining doctor when the non-examining physician clearly states the reasons for his or her differing opinion. *Carter*, 36 Fed. App'x at 191, citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994).

      Plaintiff also adds an argument relating to GAF scores to this part of her Step Three argument although she notes that the ALJ found at Step Four that Plaintiff would have no work absenteeism due to her depression.  ECF Dkt. #12 at 10.  She asserts that the ALJ focused on a GAF of 90 attributed to Plaintiff upon her discharge from the hospital on November 8, 2006.  *Id.* at 11.  She notes that Plaintiff had a GAF of 25 upon admission to that hospital on November 1, 2006 and had a GAF score of 50 from Bridgeway Counseling, on November 13, 2006, after her discharge from the hospital.  *Id.*  She further indicates in a footnote that the ALJ mistakenly referred to the VE as Mark Anderson when the VE at the hearing was Carol Mosely.  *Id.* at 12, fn. 3.  The Court is unclear of Plaintiff's purpose in presenting this information as part of a Step Three analysis as she fails to explain her reasons for such an argument[3].

      The ALJ did discuss the GAF of 90 in his Step Four analysis with respect to determining Plaintiff's credibility.  Tr. at 44.  However, he did not solely rely upon this GAF or any of the GAFs for his determination.  He reviewed Plaintiff's history relating to her depression, indicating that Plaintiff was rated a GAF of 25 upon admission to the hospital in November 2006 and was discharged with a GAF of 90 upon discharge on prescribed medications.  This shows that the

---

[3] The Court notes that Plaintiff cites the mistaken reference to Mark Anderson as VE in the footnote and indicates that it is "[l]ess trobling[sic]} than the other errors in the ALJ's decision, but Plaintiff then fails to complete the rest of her argument, if any, concerning the impact of the ALJ's misidentification of the VE.  ECF Dkt. #12 at 11, fn. 3.  She notes the mistaken reference and then begins "[i]t appears that the ALJ may have..." and fails to complete the rest of the sentence.  *Id.*  Again, although sloppy, Plaintiff fails to show any prejudice or harmful error resulting from merely a mistaken identification of the VE.  It appears that the information provided by VE Carol Mosely was correctly cited and used by the ALJ.  Plaintiff does not challenge any inaccurate citation or use of the information by the ALJ of the information provided by Ms. Mosely to the ALJ.

ALJ did consider both the GAF of 25 and the GAF of 90 in his determination. The ALJ also reviewed Plaintiff's counseling sessions, where she rated her depression as a 6 out of 10 in severity, with 10 being the worst. *Id*. He noted that Plaintiff's rating came at a time when she reported that she had not taken her medication for a month and was sleeping a lot and feeling like she did not want to do anything. *Id*. He also noted the medication adjustments made thereafter. *Id*. In support of his finding that Plaintiff would not require time off from work due to her depression, the ALJ noted the GAF score of 90 to show that when she complied with prescribed medications, she had only slight limitations at most. *Id*. He therefore concluded that with medication adjustment and compliance, Plaintiff would not experience excessive absenteeism due to her depression. *Id.*

Substantial evidence supports the ALJ's determination. The ALJ did not rely solely upon the GAF score for his determination and used it only to conclude that medication compliance showed that Plaintiff had little limitation in her abilities, including the ability to attend work. He discussed Plaintiff's medical history and treatment in making such a determination.

For these reasons, the Court rejects Plaintiff's Step Three assertions of error.

C. **RFC**

Plaintiff also asserts numerous errors with the ALJ's RFC determination and the hypothetical question presented to the vocational expert ("VE"). ECF Dkt. #12 at 12-15. The ALJ presented the VE with a hypothetical question of a person with Plaintiff's age and background who could perform light work with the inability to use left leg controls, no climbing of ladders, ropes or scaffolds, no driving, avoidance of hazardous heights or machinery that was unprotected, and simple, routine tasks with large print reading, and superficial interaction with co-workers and the general public. Tr. at 26. The ALJ asked the VE if such a person could perform any of Plaintiff's past work and the VE responded that the person could perform Plaintiff's past work as a house cleaner. *Id*. at 27. The VE also identified jobs of a laundry worker, inspection worker, and stock worker. *Id.* When the ALJ added limitations of a sit/stand option every thirty minutes and the use of a cane for walking, the VE responded that the jobs previously identified would be precluded with these additional limitations on the hypothetical

person. *Id.* at 27-28.

The ALJ then asked the VE how often a person could be off task outside of customary work breaks or be absent from work and still perform the jobs that she had identified. Tr. at 28. The VE responded that such a person could be off task up to ten percent and could be absent no more than once per quarter. *Id*. at 28-29.

Plaintiff first asserts that the ALJ ignored the VE's testimony that the jobs that she identified in response to the ALJ's hypothetical person could not be off task more than 10% of the time or be absent more than 25% of the time. ECF Dkt. #12 at 13. Plaintiff cites to a RFC evaluation by Dr. Roman on January 18, 2007 that opined that Plaintiff had "poor" abilities to maintain regular attendance and be punctual within customary tolerances, maintain concentration and attention for extended periods of time, deal with work stresses, understand and execute detailed instructions, perform at a consistent pace without an unreasonable amount and length of rest periods, and to complete a normal workday without interruption from psychologically-based symptoms. *Id.* She concludes that the ALJ erred in not adding the interruption and absence limitations opined by Dr. Roman to his RFC.

When reviewing medical evidence in support of a claim for social security, an ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2). If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2)(i),(d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record. 20 C.F.R. §

404.1527(d)(2), 416.927(d)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544, quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Here, the ALJ did not conduct a treating physician analysis as to Dr. Roman's opinion, but the record does not reveal the extent or length of the treatment relationship between Dr. Roman and Plaintiff.  Moreover, even if she qualified as a treating physician, Dr. Roman failed to provide any clinical or objective support for her opinion as to Plaintiff's limitations.  A treating physician's opinion must be supported by objective medical facts in order to be afforded significant weight.  *Carter,* 36 Fed. App'x 190, 191, citing *Walker*., 980 F.2d 1066, 1070; *Shelman*, 821 F.2d 316, 321.  An ALJ may properly disregard an opinion of a treating physician opinion when the opinion is not supported by clinical findings or medical evidence. *Carte*r, 36 Fed. App'x at 191, citing *Cutlip*, 25 F.3d at 287.  An ALJ may accept a non-examining physician's opinion over that of an examining doctor when the non-examining physician clearly states the reasons for his or her differing opinion. *Carter*, 36 Fed. App'x at 191, citing *Barker*, 40 F.3d at 794.

In this case, Dr. Pickholtz, a consultative examiner, provided a comprehensive psychological report and opined that with her current medications, Plaintiff's depression was

-14-

mild at worst, and she had only mild limitations in her overall abilities to handle eight-hour work activities relating to speed, consistency, and reliability, and to handle the stresses and pressures of low skilled and unskilled labor. Tr. at 547. Moreover, Dr. Vicki Casterline, an agency consulting psychologist, completed a mental RFC assessment opining that Plaintiff was not significantly limited in her abilities to maintain concentration and attendance for extended periods or to perform activities within a schedule, to maintain regular attendance, or to be punctual. *Id*. at 549. Dr. Casterline further opined that Plaintiff was moderately limited in her abilities to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to respond appropriately to changes in the work setting. *Id*. at 550. Dr. Casterline provided a detailed explanation of the medical evidence which supported her assessment. *Id.* at 551. She explained that Dr. Roman failed to support her opinion with any clinical findings and therefore gave that opinion no weight and relied upon Plaintiff's reports that her depression had improved with medication, Dr. Pickholtz's supported opinion, and the findings of Dr. Vazquez, who had conducted the initial psychiatric evaluation of Plaintiff on November 13, 2006 after her hospitalization. *Id.* at 517-529.

It is true that a VE's response to a hypothetical question that does not accurately portray Plaintiff's physical and mental states cannot constitute substantial evidence to support an ALJ's finding that Plaintiff could perform past relevant or other work. *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 241 (6th Cir. 2002). However, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. § 416.946. Since Dr. Roman provided no clinical support for her opinion, the ALJ was not required to rely upon this opinion and could attribute more weight to both the agency physicians and the evidence in the record.

Plaintiff also questions the ALJ's findings that Plaintiff had "moderate" limitations in social functioning and maintaining concentration, persistence or pace. ECF Dkt. #12 at 14. She cites to *Johansen v. Comm'r*, 314 F.3d 283, 286 (7th Cir. 2002) for support that "moderate" limitations are quantified as "difficulty in a given area of work-related functioning between twenty-five and fifty percent of the time." *Id*. Noting that this decision is not binding upon this Court, Plaintiff nevertheless cites it as persuasive and asserts that the ALJ here should have

-15-

incorporated these findings into his RFC for her. *Id*.

As pointed out by Defendant, the Seventh Circuit Court of Appeals in *Johansen* does not quantify the meaning of "moderately limited." ECF Dkt. #15 at 19; *Johansen*, 314 F.3d at 286. Dr. Berney, a psychologist, opined that "moderately limited" meant that an individual "might experience difficulty in a given area of work-related functioning between twenty-five and fifty percent of the time." *Johansen*, 314 F.3d at 286. Johansen's attorney asked the VE at the ALJ hearing whether an individual could perform sustained employment when he could not maintain a regular schedule or complete a normal workweek between twenty-five to fifty percent of the time. *Id*. The VE responded that such a person could not. *Id*. The ALJ did not mention the VE's conclusion that a person could not perform sustained employment if he could not maintain a regular schedule or complete a normal workweek between twenty-five to fifty percent of the time. *Id*. Johansen challenged the ALJ's failure to mention this conclusion of the VE and the Seventh Circuit found that substantial evidence supported the ALJ's decision not to rely upon Dr. Berney's opinion as to the moderate limitations because he had failed to make a RFC assessment. *Id*. at 289.

Here, Dr. Casterline made a work capacity assessment and the ALJ gave it some weight because it was consistent with the record. Tr. at 45, 555. Accordingly, the ALJ did not err in failing to incorporate Dr. Roman's unsupported findings into his RFC.

Plaintiff also contends that the ALJ erred by not including a sit/stand option in his RFC. ECF Dkt. #12 at 14. As support, Plaintiff points to her testimony before the ALJ and to two medical records. She first cites her testimony before the ALJ that she could only sit for thirty minutes at a time and had trouble getting up from a seated position because of the pulling in her back and her knee. Tr. at 17-18. She then cites to medical records from Metrohealth Medical Center showing that on December 28, 2005, she presented to Dr. Imad Francis for complaints of knee pain. *Id*. at 434. A physical examination showed a slightly more swollen left knee than the right, but with no tenderness or redness. *Id*. Plaintiff received a steroid injection and experienced "instant relief of pain." *Id.* at 435. Plaintiff also points to an August 13, 2002 record from Metrohealth indicating that Plaintiff presented for knee symptoms and indicated that

-16-

the knee pain usually came and went but had not gone away this time. *Id*. at 445. Plaintiff reported that the knee was now locking and the examining doctor indicated a need for an evaluation for an arthroscopy. *Id.* at 446. Crepitus was noted in both knees, coarser on the left, with effusion. *Id.*

Again, the responsibility for determining a claimant's RFC rests with the ALJ and substantial evidence supports the ALJ's RFC determination, which did not include a sit/stand option. The ALJ reviewed the medical evidence regarding Plaintiff's left knee, noting only mild degenerative joint disease on an x-ray, a gap in treatment for her knee pain, a 2005 x-ray showing only moderate osteoarthritis with a small amount of effusion, an intact neurological examination, a lack of surgery, no doctor's prescription for her use of a cane, and otherwise conservative treatment. Tr. at 43-45. He also noted that no physician limited Plaintiff's ability to stand and walk. *Id*. at 45. The treatment notes cited by Plaintiff only highlight the conservative treatment that she received for her knee pain and show that no doctor limited her abilities to sit or stand due to her knee pain. These findings, coupled with the fact that agency doctors had opined that Plaintiff was capable of greater physical exertion than found by the ALJ, constitute substantial evidence for the ALJ's decision not to include a sit/stand option in his RFC assessment.

### D. CREDIBILITY

Plaintiff lastly contends that the ALJ erred in discounting her credibility to the extent that it was inconsistent with his RFC assessment. ECF Dkt. #12 at 15. The Court finds no merit to this assertion.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929, SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847,

853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Plaintiff contends that the ALJ based his credibility findings upon an incomplete reading of her medical record and misinterpretation of her testimony at the hearing. ECF Dkt. #12 at 15. She asserts that "[t]he ALJ built his factual basis by taking Plaintiff's testimony out of context and selectively acknowledging parts of her statements while leaving important segments out." *Id*. at 15.-16. She cites to only one example, though, alleging that the ALJ's decision shows that he discredited Plaintiff's need to use a cane because he said she used the cane in her right hand even though she had complaints of pain in her left knee. *Id*., citing Tr. at 42, 44.

The ALJ set forth the proper standards for evaluating Plaintiff's credibility. Tr. at 42. He found that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms of which she complained, Plaintiff's statements concerned the intensity, persistence and limitations were not credible to the extent that they were inconsistent with his RFC. The ALJ did incorrectly state that Plaintiff used a cane in her right hand even though she had left knee pain and used this mistake in evaluating her credibility. *Id*. at 44. However, the ALJ cited a number of other supported reasons for discrediting Plaintiff's credibility as to disabling knee pain. He reviewed the medical evidence with regard to Plaintiff's knee pain, including the facts that a 2002 x-ray showed only mild degenerative joint disease and a 2005 x-ray showing only moderate osteoarthritis with a small amount of effusion. *Id.* at 43. The ALJ also noted that Plaintiff used a cane, but the records did not show that a doctor prescribed the cane. *Id.* at 44. He further noted that Plaintiff received conservative treatment for her knee pain, including a steroid injection, which provided instant relief, and no doctor had offered an opinion as to any limitations resulting from Plaintiff's left knee impairment. *Id*. at 44-45. Accordingly, although the ALJ mistakenly stated that Plaintiff used a cane in her right hand, this misstatement was not the main or the only reason for discrediting Plaintiff's testimony and substantial evidence supported the ALJ's decision to discount her credibility.

For the foregoing reasons, Plaintiff's contention that the ALJ erred in assessing her credibility is not well-taken.

## VI.    CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and DISMISSES the instant case in its entirety with prejudice.


DATE: November 17, 2010               */s/George J. Limbert*
                                      GEORGE J. LIMBERT
                                      UNITED STATES MAGISTRATE JUDGE